UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Ocala Division)

CASE NO.:

LISSA HOSTOMSKY, as
Personal Representative of the Estate
of EDWARD C. TOWNSEND, III, for the
benefit of Lissa Hostomsky, surviving parent,
Edward C. Townsend, Jr. surviving parent, and
The Estate of EDWARD C. TOWNSEND, III,

     Plaintiff,

v.

BILLY WOODS, in his official capacity as Sheriff
of Marion County, Florida; DAVID BURGESS,
in his individual capacity; and ASHLYN
WHELCHEL, in her individual capacity,

     Defendants.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, LISSA HOSTOMSKY, as Personal Representative of the
Estate of EDWARD C. TOWNSEND, III, for the benefit of Lissa Hostomsky,
surviving parent, Edward C. Townsend, Jr., surviving parent, and the Estate
of EDWARD C. TOWNSEND, III, hereby sues BILLY WOODS, in his official
capacity as Sheriff of Marion County, Florida; Deputy DAVID BURGESS, in
his individual capacity; and Deputy ASHLYN WHELCHEL, in her individual
capacity, and as grounds therefore states:

## A. PARTIES

1. Plaintiff, Lissa Hostomsky, is one of the surviving parents of Edward C. Townsend, III, deceased, and is duly appointed as the Personal Representative of Edward C. Townsend, III's Estate. (See, Exhibit "A", Letters of Administration and Exhibit "B", Order Appointing Personal Representative).

2. The potential beneficiaries of the Estate of Edward C. Townsend, III in this action and the relationship of each to the decedent are as follows:

    a. Lissa Hostomsky, surviving parent;

    b. Edward C. Townsend, Jr., surviving parent; and

    c. Estate of Edward C. Townsend, III.

3. At all times relevant hereto, and at the time of his death on January 24, 2023, Edward C. Townsend, III was a citizen of the United States and a resident of the city of Summerville, Dorchester County, South Carolina.

4. At all times relevant hereto, and at the time of Edward C. Townsend, III's death on January 24, 2023, Plaintiff Lissa Hostomsky, Personal Representative of the Estate of Edward C. Townsend, III, was a citizen of the United States and a resident of the town of Lady Lake, Marion County, Florida.

5. Defendant, Billy Woods, is the sheriff of and a resident of Marion County, Florida, a political subdivision of the State of Florida.

6. At all times relevant hereto, Defendant David Burgess, was a law enforcement officer employed by the Marion County Sheriff and was a resident of Marion County, Florida.

7. At all times relevant hereto, Defendant Ashlyn Welchel, was a law enforcement officer employed by the Marion County Sheriff and was a resident of Marion County, Florida.

8. At all times relevant hereto, Defendants Burgess and Whelchel were acting within their scope of employment as officers employed by the Marion County Sheriff and were acting under the color of state law, ordinance, and/or regulation.

### B.    JURISDICTION AND VENUE

9. This is a civil action arising out of the wrongful death of Edward C. Townsend, III and asserting causes of action against Defendants for wrongful death and violations of Edward C. Townsend, III's civil rights under the United States Constitution, specifically the Fourth and Fourteenth Amendments thereto; violations of 42 U.S.C. §§ 1983, 1988; and violations of Florida Statutes and common law.

10.   This action seeks monetary damages against Defendants in excess of $75,000.00, exclusive of interest, attorney's fees and costs.

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's § 1983 claim.

12. This Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367 because these claims are so related to Plaintiff's § 1983 claims that they form part of the same case or controversy.

13. Venue is proper in this court under 28 U.S.C. § 1391(b) because the parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to the claims asserted herein occurred in this district.

14. All conditions precedent to the filing of this action has either been performed or waived.

## C.   FACTUAL ALLEGATIONS

15. On December 29, 2022, Edward C. Townsend, III, (hereinafter "Townsend" or "Decedent") was visiting his mother, Plaintiff, Lissa Hostomsky, at her home located at 17117 SE 71st Lewisfield Terrace in The Villages for Christmas.

16. At approximately 9:32 p.m., Townsend called 911 to report that he wanted law enforcement assistance to help him retrieve his car keys from his mother's home so that he could return to South Carolina.

17. During the 911 call Townsend explained that his uncle was physically pushing him around and his stepfather was threatening him. Townsend did not want to explain what had happened to the call taker and said he would wait for a deputy to respond. The call taker kept asking Townsend questions, one of which was whether there were any weapons involved. Townsend indicated there were multiple guns in the home that his stepfather owned. The call taker never asked if Townsend himself was armed or had access to a weapon.

18. Townsend was frustrated there was no deputy arriving to assist him in retrieving his car keys and expressed that to the call taker.

19. Townsend continued to stay on the line with the call taker and told her that his uncle and stepfather were outside and in his car. He stated that he could hear the car doors slamming and thought it might be a gunshot.

20. Townsend continued to stay on the call with 911 and provided descriptions and the names of his uncle and stepfather. He then told the call taker he needed to call his lawyer. The call taker stated he needed to

stay on the line with her. Townsend asked if he could call his lawyer while he stayed on the phone with her.

21. Defendant Burgess arrived on scene, and instead of making contact with Townsend, he proceeded directly to the home without waiting for backup. Deputy Burgess did not seek to first meet with Townsend, who had requested assistance and reported a possible assault.

22.  Townsend then told the call taker that he saw the deputy at his mother's house and gave the call taker a description of what he was wearing and asked her if he could hang up.

23.  This call between the 911 call taker and Townsend lasted approximately 14 minutes and 10 seconds.

24.  Defendant Burgess arrived at the Plaintiff's home and, prior to the arrival of his backup, began banging on the window and doors of the home, but no one answered.  Defendant Burgess then began to walk back to his police cruiser at which point he noticed Townsend walking towards him.

25.  Defendant Burgess asked Townsend if he was the one that called 911 and Townsend replied yes and had his hands outstretched toward Defendant Burgess in a non-threatening and congenial manner.

Townsend's hands were shown to be open, empty and free of any weapons.

26.   Townsend did not present any verbal or non-verbal cues that would indicate he was a threat to Defendant Burgess.

27.   Defendant Burgess, while enroute to the scene, did not investigate by asking dispatch whether Townsend had confirmed he had a firearm on his person or if anyone one saw Townsend with a firearm, but instead acted on imperfect or incomplete information.

28.   At no time prior to his physical encounter with Townsend did Defendant Burgess assess what threat, if any, Townsend posed. Defendant Burgess did not wait for backup or place himself in a safe or strategic position, but rather he immediately placed himself in an aggressive position that is contrary to basic law enforcement training.

29.   Verbal commands by law enforcement are the least forceful method of controlling a scene and gaining subject compliance.

30.   At no time prior to his physical encounter with Townsend did Defendant Burgess give any verbal commands to Townsend such as "Freeze!", "Don't move!", "Show me your hands!", "Hands up!", "Get Down!", or other similar variations.

31. At no time prior to his physical encounter with Townsend did Defendant Burgess investigate from a position of safety, ask Townsend if he was carrying a firearm, nor did he ask Townsend to pull up his shirt and display his waistband.

32. At no time prior to his physical encounter with Townsend did Defendant Burgess ask Townsend if he could pat him down for weapons.

33. At no time did Defendant Burgess illuminate Townsend with a flashlight or take a defensive posture.

34. Rather than maintaining distance, Defendant Burgess told Townsend to "Come here, come here, turnaround" and immediately began to attempt cuffing Townsend's hands.

35. Townsend complied and walked to Defendant Burgess, greeted the deputy, turned around and placed his hands behind his back as directed by Defendant Burgess.

36. Townsend asked if he was being arrested and Defendant Burgess told him he was being detained.

37. Defendant Burgess never told Townsend that he was being detained because he had a reasonable belief that Townsend was armed with a gun. In fact, Defendant Burgess gave Townsend absolutely no reason at all.

38.  As Townsend stood with his hands behind his back, Defendant Burgess dropped his handcuffs and, upon picking them up, pushed Townsend up against his patrol vehicle.

39.  Defendant Burgess immediately escalated the confrontation contrary to basic law enforcement techniques.

40.  Defendant Burgess gave no verbal direction to Townsend and instead further escalated the situation by threatening Townsend by saying, "You will eat this concrete."

41. Townsend became non-compliant because he was confused as to why he was being detained and the confrontational nature of Defendant Burgess because he had called 911 for assistance.

42.  Defendant Whelchel pulled up in her vehicle and saw Townsend and Defendant Burgess standing at the side of Burgess' vehicle.  Defendant Whelchel thought they were conversing until she got out of her vehicle and noticed that Defendant Burgess was attempting to handcuff Townsend.

43.  Like Defendant Burgess, Defendant Whelchel, while enroute to the scene, did not request clarification from dispatch as to whether anyone had confirmed Townsend had a firearm on his person or saw a firearm,

but instead acted on imperfect or incomplete information without investigation.

44. Defendant Whelchel went to assist Defendant Burgess as Townsend began to struggle.

45. Defendants Whelchel and Burgess held Townsend as Defendant Burgess punched Townsend in the midsection.

46. Defendant Whelchel did not ask why they were detaining Townsend or make any inquiry to Defendant Burgess.

47. Plaintiff, Lissa Hostomsky came out of her home and saw Defendant Burgess punching Townsend and screamed at Defendants Burgess and Whelchel that Townsend is her son and to stop.

48. Rather than evaluate this new information, Defendants Burgess and Whelchel disregarded it and took Townsend to the ground.

49. It is unclear as to the exact actions of Defendants Burgess and Whelchel as both of their body worn cameras "fell off" during the struggle and both Defendant Burgess and Defendant Whelchel failed to activate their in-car cameras in their police vehicles.

50. Based on the body worn camera audio, Defendant Whelchel grabbed her taser and drive stunned Townsend in his abdomen five times and

used the Taser in a manner not consistent with her training to inflict pain upon Townsend.

51. Defendant Whelchel soon thereafter yelled to Defendant Burgess that Townsend had her taser.

52. Even though Defendant Burgess could not see the threat, he drew his service firearm and shot Townsend in the lower back without any warning.

53. It was approximately 64 seconds from the time Defendant Burgess came in contact with Townsend until the time he shot him.

54. Defendant Burgess could have used his Taser 7 or baton to gain control over Townsend when Defendant Whelchel yelled that Townsend had her taser, instead Defendant Burgess used deadly force which eventually caused the death of Edward C. Townsend, III.

55. At all times relevant hereto, Edward C. Townsend, III was unarmed and posed no threat of substantial harm to Defendants Burgess and Whelchel, or to the public.

56. Defendant Whelchel, in her interview with FDLE on December 30, 2022, was not truthful when she stated that "When I showed up, Deputy Burgess began to detain that subject and *pat him down for weapons.* That kind of got into a little bit of a shoving match…" Based on the body

worn camera footage of Defendants Burgess and Whelchel, at no point during Defendant Burgess' encounter with Townsend did he pat down or attempt to pat down Townsend. Nor did Defendant Burgess tell Townsend that for officer safety he was detaining him because there were reports that Townsend may be armed with a weapon.

57.   Defendant Whelchel, in her interview with FDLE on December 30, 2022, was not truthful when she stated that, "A lady came from the house and was approaching Deputy Burgess from his back, screaming, That's my son, don't hurt him, things like that...*So I kind of tried to get her away from the situation before it escalated even more.*"   Based on Defendant Whelchel's body worn camera footage, Defendant Whelchel never attempted to get Plaintiff away from the situation and failed to intervene Defendant Burgess' unlawful arrest and battery.

58.   In Defendant Whelchel's interview with the FDLE on January 12, 2023, she again stated that, "...the guy's mom actually came out of the house and was screaming, That's my son, don't hurt him.  *She actually grabbed the back of Deputy Burgess' shirt, so I had to push her away...*" Again, an untruthful statement based on body worn camera footage that shows Defendant Whelchel never attempted to push Lissa Hostomsky out of the way as both deputies were falling to the ground with Townsend.

59. Defendant Whelchel admitted in her interview with FDLE on December 30, 2022, that, "...I tune them out, [referring to 911 call taker/radio dispatch] because they talk so much, and I just read my call notes, but I specifically remember reading, like not cooperating, not listening to call taker, you know."

60. Defendant Burgess was untruthful in his interview with FDLE on January 12, 2023, when he stated that, "At that point, I had told him to come here, *and I was going to detain him because he had stated he was going to get a firearm and shoot people. For my safety and his, I was just going to put him in handcuffs*, and then figure out what all was going on, on the scene."

61. Defendant Burgess admitted that he was attempting to detain Townsend by force, without notice, and before any investigation.

62. At no time during the encounter with Townsend did Defendants Burgess or Whelchel explain to Townsend or issue commands such as, "Stop resisting," "Place your hands behind your back," or "If you refuse, force will be used against you."

63. Defendants Burgess and Whelchel inappropriately and excessively subjected Townsend to pain with little or no direction on how to make it

stop or an opportunity to comply, contrary to standard law enforcement training.

64.   The limited orders given by Defendants Burgess and Whelchel were without explanation, unclear, and overly relied on pain to encourage submission rather than communication and control tactics.

65.   In committing the acts alleged in the preceding paragraphs, Defendants Burgess and Whelchel were employed by the Marion County Sheriff and acting at all relevant times within the scope of their employment relationship.

66.   At no time did Defendants Burgess or Whelchel intervene upon the other's unlawful conduct.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983 (POLICY, CUSTOM, OR USAGE OF MARION COUNTY SHERIFF)

67.   Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

68.   This is an action for damages against the Defendant Billy Woods, in his official capacity as the Sheriff of Marion County, for the deprivation of Edward C. Townsend, III's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

69.  At all time material hereto, the employees, agents and/or officers of Sheriff Wood, including the officers named as defendants herein, were acting under the color of state law and pursuant to the policy, custom and/or usage of the Marion County Sheriff.

70.  The Marion County Sheriff created and allowed a policy, custom or usage whereby its deputies detained individuals without probable cause and/or condoned the use of excessive force as a means of de-escalation, to wit:

a.  In 2012, Joshua Salvato, who was 21 years old, was walking down the road where an alleged disturbance had been called into 911. Joshua was not violent, he was not committing any crime, was in a place he had the right to be and was not a danger to himself or others.   A Marion County Sheriff Deputy who was going to the alleged disturbance and saw Joshua walking on the road and stopped to ask him questions about his recent whereabouts.  The deputy exited her vehicle and asked Joshua if he was carrying a weapon and told him to empty his pockets.  Joshua complied and also answered the deputy's questions. Joshua attempted to leave on several occasions but the deputy continued to block him.

Without placing Joshua under arrest, without reading him his Miranda rights, and without explaining why she was detaining him or what he did wrong, the deputy ordered Joshua to get on the ground, Joshua complied. Another deputy came as backup. This deputy leapt from his vehicle and immediately ordered Joshua to lie face down on the ground and place his hands behind his back. Then both deputies forcefully and with unjustified excessive force attempted to handcuff Joshua which caused him to fear for his safety. Joshua was able to escape from the two deputies.

The female deputy, who knew she was in no danger from Joshua, and knew he was unarmed, pulled out her service pistol and opened fire on Josh, shooting him in the abdomen. The male deputy then shot Joshua with his Taser multiple times until he fell to the ground. Joshua would shortly thereafter die from his wounds.

b. In June of 2014, Dustin Heathman had an armed encounter with Marion County Sheriff's deputies and surrendered himself. Mr. Heathman was complying with all deputy commands. Without any justification deputies struck Mr. Heathman with a blow to the right eye that fractured his orbital bone and knocked him to the ground. Despite the fact that he was not resisting, the officers continuously

beat Mr. Heathman while he was on the ground, striking him multiple times in the face and head.  When Mr. Heathman was handcuffed, the Marion County deputies lifted him off of the ground and threw him into the back of armored vehicle.  One of the deputies began bouncing up and down on Mr. Heathman's head with his hard kneepads, smashing Mr. Heathman's head and face into the metal floor of the armored vehicle multiple times.  No report was ever filed and no investigation was ever performed and the Sheriff at the time attempted to cover up the actions of his department.

c. In August of 2014, Marion County Sheriff's Office deputies were participating in an operation which included the execution of multiple search warrants.  Derrick Price's home was included in that operation.  When deputies converged on his home, Derrick Price fled. Marion County deputies soon spotted Mr. Price in the parking lot of a business.   When Mr. Price saw the deputies approaching him, he immediately raised his hands, laid down on his stomach on the paved parking lot with his hands at his side and surrendered to the deputies. Mr. Price's hands were visible, he was compliant, non-resistant and did not pose a threat to deputies or

the public. Despite Mr. Price surrendering and posing no threat, Marion County deputies began beating Mr. Price by repeatedly kicking him in the ribs, and beating him about his head, neck and shoulders. At no time was any force necessary once Mr. Price surrendered other than to place handcuffs on him. Deputies submitted false reports in order to hide the true events. Chris Blair, the sheriff of Marion County at that time, encouraged his deputies to be aggressive in their work.

d. A Grand Jury was convened in 2016 to make an inquiry into certain aspects of the operation of the Marion County Sheriff's Office. The Grand Jury investigated six incidents of excessive use of force in two and a half (2.5) years, an average of one every five months, and found that these incidents were the result of a combination of factors that included and emphasis on arrests and an aggressive approach to law enforcement, combined with the failure to properly investigate and address incidents of excessive use of force.

71. Defendants Burgess and Whelchel failed to follow basic law enforcement protocol and as a result Edward C. Townsend III lost his life.

72.   The Marion County Sheriff created and allowed a policy, custom or usage whereby it failed to adequately supervise, discipline and train his employees, agents and officers, including the officers named as defendants herein, in the appropriate use of force and basic law enforcement protocol.

73.   The Marion County Sheriff ratified the misconduct of Defendants Burgess and Whelchel by failing to discipline them for failing to follow basic law enforcement techniques in detaining individuals; for the excessive use of force used against Edward C. Townsend, III, for lying under oath, and their failure to activate their in-camera car video and to properly secure their body worn cameras.

74.   Acting under color of state law and pursuant to the custom, policy and practice of the Sheriff in his official capacity as the Sheriff and in the course and scope of his supervisory authority, intentionally, knowingly or recklessly failed to instruct, supervise, control, and discipline on a continuing basis deputies in the Marion County Sheriff's Office, including Deputies Burgess and Welchel from using unreasonable and excessive force during the December 29, 2022, incident resulting in the death of Edward C. Townsend, III. Accordingly, the Sheriff in his official capacity caused, condoned, ratified or contributed to the violation of the

Edward C. Townsend, III's civil rights under the Fourth Amendment to the United States Constitution.

75.   The Sheriff's policies, practices and procedures resulted in deliberate indifference to the constitutional rights of the public and, in particular, the Plaintiff such that violations of constitutional rights are substantially likely at Marion County Sheriff's Office.

76.   The acts of the Sheriff, as set forth herein were intentional, unlawful, wanton, malicious, and oppressive.

77. Defendant, Sheriff of Marion County, directly or indirectly under color of law approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Burgess and Whelchel in the December 29, 2022, excessive use of force on Edward C. Townsend, III.

78.   The employees, agents and deputies of the Marion County Sheriff, including Defendants Burgess and Whelchel, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States, including the right to be secure in their persons against unreasonable seizures, including the use of excessive force.

79.   As a direct and proximate foreseeable result of the Fourth

Amendment violations and misconduct of the employees, agents and deputies, as set forth herein, Edward C. Townsend, III suffered injuries that caused his death.

80.   The employees, agents and deputies of the Marion County Sheriff, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure, and those fundamental rights of due process, liberty and life as guaranteed by the United States Constitution.

81.   As a direct, proximate and foreseeable result of the Fourteenth Amendment violations and misconduct of the employees, agents and deputies of the Marion County Sheriff, as set forth above, Edward C. Townsend, III suffered injuries that caused his death.

82.   As a direct and proximate result of the above-mentioned violations of Edward C. Townsend, III's constitutional rights in accordance with the policy, custom or usage of the Marion County Sheriff, Edward C.

Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

83.    As a result of Edward C. Townsend, III's injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Billy Woods, in his official capacity as the Sheriff of Marion County, Florida, for the constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT DAVID BURGESS

84.    Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

85.    This is an action for damages against Defendant David Burgess for the deprivation of Edward C. Townsend, III's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

86. At all times material hereto, Defendant Burgess was acting under the color of state law and pursuant to policy, custom and/or usage of the Marion County Sheriff.

87. Defendant Burgess, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive use of force against his person.

88. As a direct and proximate result of the violations of the Fourth Amendment and the misconduct of Defendant Burgess as set forth above, Edward C. Townsend, III suffered injuries that caused his death.

89. Defendant Burgess, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizures, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

90. As a direct and proximate foreseeable result of the violations of the Fourteenth Amendment and the misconduct of Defendant Burgess, as set

forth above, Edward C. Townsend, III suffered injuries that caused his death.

91. As a direct and proximate result of the above-mentioned violations of Edward C. Townsend, III's constitutional rights, Edward C. Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

92.   As a result of Edward C. Townsend, III's injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Deputy David Burgess, for the constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT III – VIOLATION OF 42 U.S.C. s 1983 AGAINST DEFENDANT ASHLYN WHELCHEL

93.   Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

94.   This is an action for damages against Defendant Ashlyn Whelchel for the deprivation of Edward C. Townsend, III's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

95.   At all times material hereto, Defendant Whelchel was acting under the color of state law and pursuant to policy, custom and/or usage of the Marion County Sheriff.

96.   Defendant Whelchel, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive use of force against his person.

97.   As a direct and proximate result of the violations of the Fourth Amendment and the misconduct of Defendant Burgess as set forth above, Edward C. Townsend, III suffered injuries that caused his death.

98.   Defendant Whelchel, through the actions described above, deprived Edward C. Townsend, III of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States,

including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizures, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

99.   As a direct and proximate foreseeable result of the violations of the Fourteenth Amendment and the misconduct of Defendant Whelchel, as set forth above, Edward C. Townsend, III suffered injuries that caused his death.

100.  As a direct and proximate result of the above-mentioned violations of Edward C. Townsend, III's constitutional rights, Edward C. Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

101.  As a result of Edward C. Townsend, III's injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Deputy Ashlyn Whelchel, for the

constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

### COUNT IV - BATTERY AS TO DEPUTY BURGESS

102. The Plaintiff incorporates paragraphs 1 through 66, and paragraphs 84 through 92 above as if fully set forth herein.

103. Count IV is a cause of action against Deputy Burgess for battery pursuant to Florida Statute section 768.28.

104. All conditions precedent to this action, including pre-suit notification to the Defendants, have occurred or have been performed.

105. On December 29, 2022, Deputy Burgess was an employee of the Sheriff, and was acting in the course and scope of his employment in as much as he was acting to arrest a citizen.

106. During the unlawful detention and arrest of Townsend, Defendant Burgess, without lawful authority or probable cause, committed a battery upon Townsend by repeatedly striking him in the area of his abdomen and then shot him with his department issued firearm causing bodily injury and eventually the death of Townsend.

107. The actions of the Defendant Burgess were not in the lawful

performance of his duties.

108. The use of force exerted upon Townsend on December 29, 2022, was exercised when Defendant Burgess was in no real or immediate danger of being subjected to any physical harm or force by Townsend as he was unarmed, walking towards Defendant Burgess in a non-aggressive manner with his hands open and in plain view.

109. As a direct and proximate result of the above-mentioned violations of Edward C. Townsend, III's constitutional and state law rights, Edward C. Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Deputy David Burgess, for the state law violations, constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT V - BATTERY AS TO DEPUTY WHELCHEL

110. The Plaintiff incorporates paragraphs 1 through 66, and paragraphs 93

through 101 above as if fully set forth herein.

111. Count V is a cause of action against Deputy Whelchel for battery pursuant to Florida Statute section 768.28.

112. All conditions precedent to this action, including pre-suit notification to the Defendants, have occurred or have been performed.

113. On December 29, 2022, Deputy Whelchel was an employee of the Sheriff, and was acting in the course and scope of her employment in as much as she was acting to arrest a citizen.

114. During the unlawful detention and arrest of the Townsend, Defendant Whelchel, without lawful authority and probable cause, committed a battery upon him by repeatedly using her department issued Taser on Townsend.

115. The actions of the Defendant Whelchel were not in the lawful performance of her duties.

116. The use of force exerted upon Townsend on December 29, 2022, was exercised before Defendant Whelchel had properly investigated or assessed the scene before using her department issued Taser to batter Townsend who had posed no threat prior to Defendant Whelchel's arrival on scene.

117. As a direct and proximate result of the above-mentioned violations of

Edward C. Townsend, III's constitutional and state law rights, Edward C. Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Deputy Ashlyn Whelchel, for the state law violations, constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT VI - BATTERY AS TO BILLY WOODS AS SHERIFF OF MARION COUNTY

118.  The Plaintiff incorporates paragraphs 1 through 66 and paragraphs 67 through 83 above as if fully set forth herein.

119.  Count VI is a cause of action against Billy Woods as Sheriff of Marion County for battery pursuant to Florida Statute section 768.28.

120.  All conditions precedent to this action, including pre-suit notification to the Defendants, have occurred or have been performed.

121.  On December 29, 2022, Sheriff Billy Woods and Deputies Burgess and Whelchel were employees of the Marion County Sheriff's Office and were

acting in the course and scope of their employment in as much as they were acting to arrest a citizen.

122. During the unlawful detention and arrest of Townsend, Defendants Burgess and Whelchel, without lawful authority and probable cause, committed a battery upon Townsend by beating, tasing and shooting Townsend in an excessive manner that was not reasonable under the circumstances presented.

123. The actions of the Defendants Burgess and Whelchel were not in the lawful performance of their duty.

124. Defendants failed to properly investigate and assess the scene prior to the use of force exerted upon Townsend on December 29, 2022, which was exercised when Defendants Burgess and Whelchel were in no real or immediate danger of being subjected to any physical harm or force by Townsend as he was unarmed, presented himself in a non-aggressive manner, and had his hands open and in plain view.

125. As a direct and proximate result of the above-mentioned violations of Edward C. Townsend, III's constitutional and state law rights, Edward C. Townsend, III suffered physical injury, pain, suffering, emotional distress, disability and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal

Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the Defendant, Billy Woods in his official capacity as Sheriff of Marion County, Florida, for the state law violations, constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

### COUNT VII – WRONGFUL DEATH ACTION PURSUANT TO §768.16-768.26, FLORIDA STATUTES, AGAINST MARION COUNTY SHERIFF

126. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

127. This is an action for damages against Defendant Billy Woods, in his official capacity as the Sheriff of Marion County, Florida for the wrongful death of Edward C. Townsend, III.

128. As a direct and proximate result of the negligent and intentional misconduct of Defendants Burgess and Whelchel described above, including the use of excessive force, Edward C. Townsend, III suffered fatal injuries.

129. The Defendant Marion County Sheriff is vicariously liable for the

negligent and intentional misconduct of Defendants Burgess and Whelchel, the employees, agents, and deputies.

130. As a direct and proximate result of the negligent and intentional misconduct of Defendants Burgess and Whelchel, Edward C. Townsend, III died, and Defendant, Billy Woods, in his official capacity as the Sheriff of Marion County, is responsible for his death and damages as set forth below:

   a. Lissa Hostomsky, surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of her son's companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

   b. Edward C. Townsend, Jr., surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of his son's companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

   c. The Estate of Edward C. Townsend, III has lost prospective net accumulations and has incurred medical and funeral expenses due to Edward C. Townsend, III's injury and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal

Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against Defendant, Billy Woods, in his official capacity as the Sheriff of Marion County, for all damages allowed by law including compensatory and punitive damages and costs, and further demands trial by jury on all issues so triable.

### COUNT VIII – WRONGFUL DEATH ACTION PURSUANT TO §768.16-768.26, FLORIDA STATUTES, AGAINST DEFENDANT DAVID BURGESS

131. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

132. This is an action for damages against Defendant David Burgess for the wrongful death of Edward C. Townsend, III.

133. At all times material hereto, Defendant Burgess, was acting under color of State law and under color of his authority as a deputy sheriff.

134. As a direct and proximate result of the misconduct of Defendant Burgess, as described above, Edward C. Townsend, III suffered fatal injuries.

135. Defendant Burgess' misconduct was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

136.  As a direct and proximate result of misconduct of Defendant Burgess, Edward C. Townsend, III died, and Defendant Burgess is responsible for his death and damages as set forth below:

    a.  Lissa Hostomsky, surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of her son's companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    b.  Edward C. Townsend, Jr., surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of his son's companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    c.  The Estate of Edward C. Townsend, III has lost prospective net accumulations and has incurred medical and funeral expenses due to Edward C. Townsend, III's injury and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against Defendant, David Burgess, for all damages allowed by law including compensatory and punitive damages and costs, and further

demands trial by jury on all issues so triable.

## COUNT IX – WRONGFUL DEATH ACTION PURSUANT TO §768.16-768.26, FLORIDA STATUTES, AGAINST DEFENDANT ASHLYN WHELCHEL

137. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-66 as if fully set forth herein.

138. This is an action for damages against Defendant Ashlyn Whelchel for the wrongful death of Edward C. Townsend, III.

139. At all times material hereto, Defendant Whelchel, was acting under color of State law and under color of his authority as a deputy sheriff.

140. As a direct and proximate result of the misconduct of Defendant Whelchel, as described above, Edward C. Townsend, III suffered fatal injuries.

141. Defendant Whelchel's misconduct was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

142. As a direct and proximate result of misconduct of Defendant Whelchel, Edward C. Townsend, III died, and Defendant Whelchel is responsible for his death and damages as set forth below:

   a. Lissa Hostomsky, surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of her son's

companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

b. Edward C. Townsend, Jr., surviving parent of Edward C. Townsend, III, has suffered and will continue to suffer the loss of his son's companionship and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

c. The Estate of Edward C. Townsend, III has lost prospective net accumulations and has incurred medical and funeral expenses due to Edward C. Townsend, III's injury and death.

WHEREFORE, Plaintiff, Lissa Hostomsky, as Personal Representative of the Estate of Edward C. Townsend, III, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against Defendant, Ashlyn Whelchel, for all damages allowed by law including compensatory and punitive damages and costs, and further demands trial by jury on all issues so triable.

Respectfully submitted this 9th day of September 2024.

                         RUSH & FRISCO LAW

                         */s/    Robert A. Rush*

                         Robert A. Rush
                         Florida Bar No.: 559512
                         robert@rushandfriscolaw.com
                         11 S.E. 2nd Avenue
                         Gainesville, Florida  32601
                         Tel:  (352) 373-7566
                         Fax:  (352) 376-7760
                         Attorney for Plaintiff

Filing # 176513266 E-Filed 06/30/2023 10:05:10 AM

IN THE FIFTH JUDICIAL CIRCUIT COURT
IN AND FOR MARION COUNTY, FLORIDA
PROBATE DIVISION

IN RE: ESTATE OF                                              CASE NO.: 42-23-CP-1577

EDWARD C. TOWNSEND, III,

Decedent.
_____/

### LETTERS OF ADMINISTRATION
(single personal representative)

TO ALL WHOM IT MAY CONCERN

WHEREAS, EDWARD C. TOWNSEND, III, a resident of Charleston County, South Carolina, who died on January 24, 2023, in Marion County, Florida, and did not own assets in the State of Florida or the State of South Carolina, and

WHEREAS, LISSA HOSTOMSKY has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare LISSA HOSTOMSKY duly qualified under the laws of the State of Florida to act as personal representative of the estate of EDWARD C. TOWNSEND, III, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

**DONE and ORDERED** this Thursday, June 29, 2023 in Ocala, Marion County, Florida.

42-2023-CP-001577-CPA 06/29/2023 06:02:33 PM

Kristie Healis, Circuit Judge
42-2023-CP-001577-CPA 06/29/2023 06:02:33 PM

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished by e-service on Friday, June 30, 2023 to:
ROBERT A RUSH

EXHIBIT "A"

Robert@robertarushpa.com
Andrea@robertarushpa.com
Tammy@robertarushpa.com

42-2023-CP-001577-CPA 06/30/2023 10:04:46 AM

Jay Raghunandan, Judicial Assistant
42-2023-CP-001577-CPA 06/30/2023 10:04:46 AM

EXHIBIT "A"

Filing # 176513236 E-Filed 06/30/2023 10:05:02 AM

IN THE FIFTH JUDICIAL CIRCUIT COURT
IN AND FOR MARION COUNTY, FLORIDA
PROBATE DIVISION

IN RE:  ESTATE OF                                                CASE NO.: 42-23-CP-1577

EDWARD C. TOWNSEND, III,

Decedent.
_____/

## ORDER APPOINTING PERSONAL REPRESENTATIVE

On the Petition of Lissa Hostomsky for administration of the estate of EDWARD C.

TOWNSEND, III, deceased, the Court finding that the decedent died on January 24, 2023, and that

Lissa Hostomsky is appointed personal representative by reason of being the person selected by a

majority in interest of the heirs, and the person having preference in appointment, and is qualified

to be personal representative, it is:

**ADJUDGED** that LISSA HOSTOMSKY is appointed personal representative of the estate

of the decedent, and that upon taking the prescribed oath, filing designation and acceptance of

resident agent, bond shall be waived, and letters of administration shall be issued.

**DONE and ORDERED** this Thursday, June 29, 2023 in Ocala, Marion County, Florida.

42-2023-CP-001577-CPA 06/29/2023 06:02:32 PM

Kristie Healis, Circuit Judge
42-2023-CP-001577-CPA 06/29/2023 06:02:32 PM

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished by e-service on
Friday, June 30, 2023 to:
ROBERT A RUSH
Robert@robertarushpa.com

EXHIBIT "B"

Andrea@robertarushpa.com
Tammy@robertarushpa.com

42-2023-CP-001577-CPA 06/30/2023 10:04:43 AM

Jay Raghunandan, Judicial Assistant
42-2023-CP-001577-CPA 06/30/2023 10:04:43 AM